Our last case for this morning is People v. Boston. We have Mr. Collins for the Defendant Appellant and Ms. Camden for the State. Counsel, when you're ready. Mr. Collins. Gentlemen, again, I don't think we need a lot of time to argue our position in this case, but I would like to point out that this involves a charge for criminal housing management that was tried in Massachusetts County, Illinois around April 30, 2010 before Judge Knapp. This was a bench trial. My client represented himself, pro se. We have a number of issues that we've raised in our brief in our request for a new trial that was denied by Judge Knapp. The statute of this, I guess, originated, there was a non-traffic complaint ticket issued dated around December 17, 2009 and was filed with the court on December 18, 2009. It was alleged that the Defendant, who is the owner of 306 Metal and also manages said property, allowed the fiscal condition of 306 Metal No. 4 to become and remain unsafe and endanger the welfare of the tenants. In that said property has no heat and or working furnace and inoperable smoke detectors and the subject refuses to fix. That was the allegation. Now the day of the hearing of the transcript, near the front end of page 203, apparently the, and it said in violation 720 ILCS slash slash 12-5, it looks like .2 or .7. There is no .7. So on the day of the trial, the Assistant State's Attorney made an oral motion to amend to make it under 12-5.1. There is no court order saying it was actually amended. There was no actual amended complaint filed with the court. So we have a complaint about that. But if you look under, if this is supposed to be intended to precede the trial against the individual pro se, 12-5.1, it says the person commits the offense of criminal housing management when having personal management or control of residential real estate, which we freely admit in this case that my client owned the property and managed it. Whether it's legal or equitable owner or as managing agent or otherwise, he recklessly permits, and this is what we say there's, that's not there. He recklessly permits the fiscal conditions and facilities of the residential real estate to become or remain in any condition which endangers the health or safety of any person. Now, one of our complaints is it was never alleged in the charge against him, what the court read to him. It never said recklessly permit. It just says allow. So that element was never offered as the charge against him, and certainly that element was not approved during the trial. So anyway, the court took, the court actually made a finding of guilty, and that's what we're contesting in this particular case. Sensing didn't take place until July 16, 2010. My, Mr. Boston was placed under court supervision, but he contests the finding of guilty. The report of proceedings is not that long, about 60 pages or so, 60, 69 pages. But in that particular, in the transcript, the show that the state's attorney didn't need to burn a proof on that element of recklessness. I think what it basically shows, the allegation of the tenant was basically stating Miss Ashley Boston, but she claimed around December 10, 2009, her and her family woke up in an apartment, and the heater didn't seem to be working or wasn't working properly. It was 51 degrees. And so the question is, what is my client's responsibility as a landlord or owner of the property, and what responsibilities do the tenants, if any, have in this particular case? So the question is, was he informed? How did he react to it, and what did he do? Now, during her cross-examination, this is around page 39 and 40 of the report of proceedings, the tenant freely admits that the day that they called for him, on December 10, he went out to the property and checked it out. And he also, she admits, that he did provide a substitute heating system for him, and so he could take care of the issue. On that same day that you… Yes, on December 10. This is on pages 39 and 40. What he brought over is a portable electric heater, and there was a picture that he pointed out there, and it's part of the exhibits, but it looks like an electric plug-in, it looks like a radiator or accordion, and it's oil-filled with electric energy, and it radiates heat. So he brought it over that day, and the tenant claimed she accepted the heater, but told him she didn't feel like it was safe. And on page 49, 11 through 13, Mr. Bossen told her that he had other heaters just like that if she needed any more than just this one, but she didn't take any other. And he also, he verified that she agreed that it was an underwriter, laboratory-approved heater. So he gave her a safe substitute heating system until he could address the issue. That was done on the day of. Now, what's interesting, in this time that they're talking about, December 10th, until she claimed that she had someone else look at it and fix it and gave her a bill for $351 on December 16th, there's little evidence of what type of heat was in the unit, whether it was 65 degrees higher or lower. The only testimony was she claimed outside it was in the 20s, and it was backsliding, going back and forth in the 20 degrees. But there's no testimony to say how cool it was in there. And so he gave her the heat system that night, portable safe heat system, the day of the complaint. He said he had more, but she didn't want to. And then when the inspector came over and looked at it on December 15th from the city of Troy, he said, well, besides that heater, she had her own heating system in there, and she had another door. Now, there's no testimony in there to verify what type of heating system. You know, number one, it wasn't what my client did. My client gave a portable heating system and said, I've got more. Let me know if you want any more than just this one. That's in the record. So the tenant bears some responsibility, and you can't blame a landlord for everything. So he provided the heat system, and then there was no testimony by the tenant or by the inspector. Scott Lawson, what, you know, he talks about the, is it electric or gas? There's no testimony about it. The furnace was electric or gas. No testimony about it. You know, if the testimony was, you know, if the question was asked, it would be found out it was a full electric apartment, but that's not part of the record. So anyway, he provided a safe substitute heat system, and then what did he do anything after that? Well, you know, the next day, he decided that since the system was an old system, he was going to go ahead and replace it. And so what he did, he wrote a letter on December 11th, the following day, and told her that because it was an old system, and that's part of Exhibit, Defense Exhibit 1, that he was going to go ahead and replace the heating system. He decided to go with phase 4 heating, just like he had in his own unit. He lives in the same building complex. Again, it doesn't record that, say, how many units are there. That's not part of the record, but my understanding was six units. They rented out, and there's another unit he lived in, but that's not part of the record. So anyway, so he told her, by letter, he was going to substitute. Now, the thing is, he sent it by certified mail, okay? And now she claims she didn't get that letter until about December 17th or 18th. She didn't get it. And the city allegedly wrote her letter, which is an exhibiting case, to him, and they had the city of Foyler Police Department serve it upon him, which threatened that if he didn't fix the heater by December 16th, by 2 p.m., then they were going to claim he was violating the law. And that was served, apparently, sometime on the 15th. So they gave him less than 24 hours to fix this furnace. Now, is that reasonable if the gentleman is already doing something about it? Number one, he gave him a substitute heat system that doesn't have any red coils on it or anything. It just works like a regular water radiator heating system, except it's oil-filled. And then he also offered, I got more available if you need more. Again, where's the lieutenant's responsibility on that? If she decides to use other space heaters that are not as safe as that, is that the landlord's fault in the situation? Is he aware of that? And then also, you know, if she opens an electric oven, is that his fault that she's trying to also use that as a heating system? Because the inspector said that's what he knows when he looked at her apartment on December 15th, okay? So anyway, apparently she decided to have a repairman look at it on the 16th, and she claimed that they made some repairs for 351 and it was working okay after that. Now, since Mr. Lawson decided to change the heating system, she admits in the record that within about two days of that date, so I assume we're talking around December 18th, he was able to remove the old furnace and put in a baseboard heating the same day, and that's part of the record, too. So I guess the major problem I have with it is in the original traffic complaint and then on the oral motion, which the court reads to, instead of saying in the State Superior Court, you've got to file this amended complaint with the record and make sure it's part of the record, it's lacking about showing that the record is fully permitted. Also, what I have a problem with, it says the property has no heat. There's no testimony that it had no heat. To the contrary, even the repairman said it had heat, but he just didn't like the way it was set up. But again, who did that? Did the landlord do it or did the tenant do it? This is what the tenant was doing by using her extra space heaters and then having the oven door open. And then it also says inoperable smoke detectors. Which, again, in her testimony, she admitted that once she moved in, that it was her responsibility to maintain the smoke detectors and put batteries in it. So that's part of the record, too. It says subject refuses to fix. There was no testimony that my client refused to fix. To the contrary, he went over to the day of the incident. He sent a letter, albeit that she didn't receive it for about six days, around the 17th, I think, of December. And then by the 18th, around the 18th, he actually even replaced the permanent system. It was a temporary safe system that he used. There was no reason to go forward on this type of charge. There was no evidence to substantiate it under the circumstances. Thank you. Thank you, Mr. Collins. We'll have an opportunity for rebuttal. Mr. Stanton? Thank you. Jennifer Camden on behalf of the people. May it please the Court. Counsel. First, as to the defendant's argument on his Issue 3 about the amended complaint, the people noted in the answer brief that where a defendant does not make a plain error argument, that the appellate court must honor the default. In this case, the defendant does not make a plain error argument with respect to the sufficiency or propriety of the amended complaint, and, therefore, this claim is forfeited and cannot be reached even on plain error. In any event, the circuit court's ruling on the post-trial motion makes clear that the defendant was properly apprised of the amendment to the complaint. The court read the amendment out loud to him and asked whether he had any questions. And, of course, it was just a formal defect of the charge that can be amended at any time. And, furthermore, with respect to the defendant's argument as to the question between the word I confess that I'm not familiar with this argument. I double-checked that it does not appear in Defendant's Issue 3 in his opening brief, and there's no discussion of this issue in the reply brief. So I respectfully request that this issue be considered forfeited for not having been raised and for being raised for the first time at oral argument. Moving to the sufficiency of the evidence argument, the issue is whether – oh, actually, on the same point, if I may object now to some other facts that were raised in the defendant's argument here today that do not appear in the record. The type of furnace, the number of units in the apartment building, the type of oven that it was, the assertion that the tenant's space heaters were not as safe as the defendant's heaters, there was no evidence of any of these facts in the record. Moving to the sufficiency of the evidence of the charge, the question is whether a rational fact finder could have found that the defendant's response to the report that the furnace was broken constituted a gross deviation from a reasonable standard of care and a conscious disregard of a substantial and unjustified risk to his tenant's health or safety. And that response was on the day of the report that it would take a week or two to replace the furnace with baseboard heaters, and until then, the tenants could make do with space heaters provided by the defendant and offered by the defendant. This response was unreasonable because the defendant unreasonably failed to investigate what the problem with the furnace was. While there's evidence in the record that on the same day as the complaint, the defendant provided the tenants with a space heater, there's no evidence in the record that the defendant went to the property for the purpose of checking out what the problem with the furnace was. The people's answer brief pointed that out. The reply brief actually appears to concede that there was no investigation and asks this court to assume instead that the defendant was, quote, familiar enough with the furnace to know that it was irreparable and needed to be replaced. But of course, the silent record is construed against the appellant and must be construed here. In fact, whatever assumption may have been made, if such an assumption was made, the record shows that it was wrong. The furnace could be and, in fact, was quickly and cheaply fixed for $321 when the tenants, after being in an unsafely and inaccurately heated apartment for five full days and nights, resorted to self-help and called an electrician themselves. The response was unreasonable because heating a home with space heaters is both inadequate and dangerous. Do you have to prove unreasonable or reckless? I believe that the definition of, I can call that up here. Okay. I mean, the statute you said he violated was at 12-5.1. It says reckless. Right. I believe that the definition of reasonableness, if I may call that up. I believe that the definition of recklessness contains that. Okay. We can look that up. But you believe under the definitions reckless is defined as unreasonable? I would love to find that for you. You go ahead. We'll look. Yes, Your Honor. I'm Page 7 of the People's Answer Brief. Got it. To prove that this is under the S4 vote case, to prove recklessness as required for a conviction of criminal housing management, the State must prove that the defendant consciously disregarded a substantial and undisclosed risk, et cetera. Okay. And then finally, the defendant's response was unreasonable because two or three days after the furnace, when they called the defendant for a status update, the mother of the family testified that the defendant said that he would get around to it because they were late with the rent. There was evidence from which a rational fact finder could have found that these substantial health and safety risks were unjustified because the furnace was a cheap and easy fix. The electrician responded immediately and service call and repair together totaled $321. There was evidence from which a rational fact finder could have found a substantial safety risk of fire or asphyxiation from carbon monoxide poisoning, dangers that the apartment lacked working detectors to detect. And the evidence of the safety risk is cited in the People's Brief. And I need not go into it here, but I will note here that the defendant claims that the space heater provided by the defendant was safe. It may have been safe for temporary auxiliary use as a space heater, but there's no evidence in the record that such heater was safe to use as a primary heating source to heat a drafty two-story apartment, which is what it was in. By the same token, the defendant's argument that he could have provided additional similar space heaters is unavailing because even if it would have raised the temperature a degree or two, there still would have been a safety risk of fire and carbon monoxide poisoning. By the same token, there was evidence from which a rational fact finder could have found a substantial health risk from inadequate heat. Unless the court has further questions about the evidence before the trial judge and the sufficiency of that evidence, I'm prepared to stand down. Thank you. Mr. Collins, do you have a rebuttal? Yes. It certainly is the reckless element, Your Honor, Judge Donovan, again. You've got 720 ILCS 5-4-6 defines recklessness. It says a person is reckless or acts recklessly when that person consciously disregards a substantial and unjustifiable risk that circumstances exist or that result will follow, described by the statute defining the offense, and that disregard constitutes a gross deviation from the standard of care that a reasonable person would exercise in this situation. An act performed recklessly is performed wantonly within the meaning of the statute, using the term wantonly unless the statute clearly requires another meaning. I think part of the problem here is the judge wrongly and incorrectly read into much of the evidence. The tenant made a statement that approximately two days after the furnace was broken down, her 3-year-old developed pneumonia, and there was no testimony as causation of pneumonia. And I think the judge was trying to think or imply that maybe it's related to not having teeth, which, you know, there was no confident evidence in that area. Certainly, you've got bacteria pneumonia, you've got viral pneumonia, and the judge kind of points that out to my client at the end of the case around page 67 of the report proceedings. And in addition, she again brings that issue about that child getting pneumonia, the other child that was about a year old or so developing an infection a couple days after that. Again, there was no confident evidence for what caused the infection. Certainly, you know, if the temperature is not 75 or 65 or 60 or 50 or whatever, that's certainly not going to cause that situation. So I think the judge improperly went into that when there was really no confident evidence. These electric heater systems, I mean, you know, they're sold. Every major store has them, Walmart, Target. I have them in my office when we need them in cold weather up front. You certainly get in a situation where I've had a tenant in the house where their furnace broke down, and before you can – if you've got to be reasonable, give a person a reasonable time to fix it, whether you're the owner of the property and you live there or you're the owner of the property and someone else lives there. It's not easy sometimes getting people out there to do the work. So you provide some safe alternative heating system, which he did, and then waiting for the system to come in. And when it came in, the heat was provided that day, so they were never without heat. He was also willing to allow a lot more heating units if they needed more, and she didn't want to use her own. But apparently she decided to use her own, so there is some tenant responsibility in here. I don't think it should be blamed by the landlord if the tenant ends up doing something improperly in a unit. So we request the court to state that the element of aggressively committing this act was not committed. He did try to use, as a reasonable person, to get some other safe heating system in there temporarily until he got another permanent heating system in there in a relatively short time. So if you talk about the 10th, you're talking about maybe around the 18th, so it took about seven or eight days before he got a permanent heating system in there, but he did have something that they could use until then if they decided to stay there versus staying somewhere else until the furnace could be repaired properly. Thank you. Thank you, Counselor, for your briefs and arguments. The court will take the matter under advisement and render its decision. We have waived oral arguments this afternoon.